Donald S. GEORGE,
Plaintiff–Appellant,

v.

John T. KING, et al.,
Defendants–Appellees.

No. 87–3397
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 17, 1988.

Donald S. George, pro se.

J. Marvin Montgomery, Peter J. Giarrusso, Asst. Attys. Gen., Baton Rouge, La., for defendants-appellees.

Before GEE, RUBIN, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Donald S. George appeals the dismissal, pursuant to 28 U.S.C. § 1915(d), of his *pro se, in forma pauperis* suit, under 42 U.S.C. § 1983, complaining of a single instance of food poisoning he suffered while confined as a state prisoner at the Dixon Correctional Institute in Jackson, Louisiana. We affirm.

Appellant's suit was filed in April 1983 against the Secretary of the Louisiana Department of Corrections and the Warden of the Dixon Correctional Institute, where appellant was then confined. Well prior to the dismissal below, appellant was transferred to another Louisiana prison. Appellant alleged that on the morning of March 18, 1983 he awoke with stomach cramps, diarrhea, and nausea. He collapsed and was found by the security man on duty, who helped him up and told him to go to the infirmary. He went to the infirmary, where he was examined by a doctor who took all his vital signs. He alleged that he was given medication and told that he would be seen by another doctor later in the day. There is no statement as to whether or not he was seen later in the day by another doctor. It is alleged that some three to four hundred other inmates also suffered from the same symptoms on the same day, and "[a]ll of us were given the day off, and told to stay in the bed." No further consequences, to appellant or any of the other prisoners, are alleged in respect to the food poisoning, except that in

his proposed pretrial order appellant stated, "Because of the food poisoning, I suffered great mental and physical pain for several days." No complaint is even intimated concerning the medical response or treatment given for the food poisoning.

The complaint sought damages "for neglect of Dixon Correctional Institute's Warden to provide safe and clean meals and for allowing unsanitary food and/or unsanitary utensils to be used in the preparation of the foods here," and also "for allowing the preceding conditions to prevail ... with no attempts made to correct them until inyates [*sic*] were sick." In his proposed pretrial order, appellant stated that his food poisoning "was caused through neglect of the Food Service Department, and their policy of serving food which has been left over from other meals for several days." In his brief on appeal, appellant states that this is "not a signed institutional policy," but rather is "a practice which is known to exist by the governing body at Dixion [*sic*] Correctional Institute." He further states in his brief that "defendants who had knowledge of the policy employed by the Food Service Department, at the Dixion Correctional Institute, whereby foods prepared days earlier are stored for future serving, allowed said policy to exist which ultimately became the launching pad for the bad food that caused appellants [*sic*] food poisoning."

The brief further contends that "defendants' knowledge of the policies ..., and allowing said policies to exist, acted as an official approval of said policy, even though said policy did not receive formal approval."

In February 1987, almost four years after this suit was filed and, as appellant characterizes it, "[a]fter numerous motions, pretrial orders, and discovery proceedings," the magistrate recommended the dismissal of appellant's suit, pursuant to section 1915(d), on the basis that "it is clear that plaintiff's allegations are frivolous and have 'no realistic chance of ultimate success,'" citing *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986). The magistrate noted that "[a]lthough the

plaintiff indicates many inmates were affected by one allegedly spoiled meal, the incident is isolated, caused no serious medical complications and does not amount to a violation of federally protected rights." Appellant filed objections to the magistrate's report, reiterating that he could prove that he suffered food poisoning at the Dixon mess hall on March 18, and that three to four hundred other inmates there were likewise treated for food poisoning "on that date." He likewise reiterated that "[t]his incident was caused through neglect of the Food Service Department and their policy of serving food which has been left over from other meals for several days." At no time, either in his objections to the magistrate's report or otherwise, did appellant ever intimate that either he or any other inmate ever suffered any food poisoning at any time other than on March 18, 1983, this despite the fact that the suit had been on file for nearly four years, and appellant had remained at the Dixon Correctional Institute for over two years after the suit was filed. In his brief on appeal, appellant challenges the magistrate's determination that the food poisoning was an isolated incident, saying, "[T]his is an erroueous finding since appellant in his pretrial order to the lower court, listed serveral [*sic*] inmates who would testify that they had also experienced food poisoning on the same day as appellant."

Accordingly, granting full liberality to all appellant's filings as appropriate for a *pro se* litigant, it is nevertheless plain that this case presents only the question of whether a prisoner's suit asserting a single incident of food poisoning, not causing any permanent injury or serious medical complications and which is treated with at least minimal adequacy, states a claim for deprivation of constitutional rights, where the illness allegedly arises from the neglect of the prison food service department and its informal policy "whereby foods prepared days earlier are stored for future serving," no other such incidents being claimed. More precisely, the question is whether, when it becomes clear that this is all that is claimed, the suit may be dismissed under section 1915(d) without an evidentiary hear-

ing or a motion for summary judgment. We answer this question in the affirmative.

As we have noted, "[d]istrict courts are vested with especially broad discretion" in determining whether IFP complaints are subject to dismissal as frivolous under section 1915(d), and dismissal thereunder is appropriate where the complaint has no "'realistic chance of ultimate success.'" *Green*, 788 F.2d at 1119, 1120. Measuring appellant's rights as a prisoner under the Eighth Amendment, the relevant standard is certainly no less than the "deliberate indifference to serious medical needs" of *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). *See also Johnson v. Treen*, 759 F.2d 1236 (5th Cir. 1985). And in this context, it also appears that the "Due Process Clause affords no greater protection than does the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). Moreover, it is plain that mere negligence does not suffice. *Gamble; Daniels v. Williams*, 474 .U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

We have said that a state must "'furnish[ ] its prisoners with reasonably adequate food ...' to satisfy constitutional requirements." *Green*, 788 F.2d at 1126. Certainly, the Constitution does not tolerate the administrative transformance of a sentence of several years' imprisonment to one of a gulag-type death by incremental starvation. Obviously, however, we are not here dealing with anything comparable to that. Rather, we confront a single incident of mass food poisoning of the kind occasionally experienced by those in military service or in other institutional settings, as well as individually in the more routine course of daily life. We spoke, albeit in dicta, to this sort of situation in *Roberts v. Williams*, 456 F.2d 819, 827 (5th Cir.1971), *cert. denied*, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971):

> "We might say careless preparation of a single meal, producing food poisoning in prisoners, was not cruel, but it might be so if the jailors negligently allowed the jail's only drinking water supply to become permanently infected with typhoid bacteria."

■ Although subsequent decisions, such as *Gamble, Daniels,* and *Whitley,* make it plain that mere negligence is not in any event a sufficient basis for constitutional claims in this context, nevertheless we believe that *Roberts* is sound insofar as it implies that a single incident of unintended food poisoning, whether suffered by one or many prisoners at an institution, does not constitute a violation of the constitutional rights of the affected prisoners.

Nor is the situation changed by the fact that this incident is alleged to have resulted from a known custom "whereby foods prepared days earlier are stored for future serving," particularly as it appears no prior (or subsequent) food poisoning resulted therefrom. If prisoners regularly and frequently suffer from food poisoning with truly serious medical complications as a result of particular, known unsanitary practices which ·are customarily followed by the prison food service organization, and the authorities without arguable justification refuse to attempt remedial measures, the requisite deliberate indifference might well be manifested or inferred. But such deliberate indifference is certainly not even suggested by a single incident, and the singularity of the incident, in light of the claimed existence of an allegedly improper custom or policy, in fact points in the other direction. *See Thompkins v. Belt*, 828 F.2d 298, 304–05 (5th Cir.1987).[1] Were it otherwise, the federal courts would of necessity become the forums for determining the propriety and desirability of virtually all details of prison food service management and proceedures, as in such institutional settings occasional food poisoning of this character, which is not productive of truly serious medical complications or permanent injury, is almost inevitable.

■ We conclude that the district court did not abuse its discretion in dismissing appellant's suit as frivolous under section

---

**1.** So, too, does the adequate and prompt medical response to the single incident.

1915(d) because the suit had no realistic chance of ultimate success.[2]

Accordingly, the judgment below is AFFIRMED.

**2.** While appellant in his suggested pretrial order also asked for injunctive relief, the same considerations discussed in the text likewise reflect the inappropriateness of such relief. Moreover, as previously noted, subsequent to the filing of the proposed pretrial order, appellant was transferred out of the Dixon Correctional Institute, the only institution to which any of his allegations below made reference. Accordingly, any claim for injunctive relief was mooted.

The judgment below is a dismissal with prejudice. However, appellant does not urge that this aspect of the dismissal is inappropriate or that he should have been given an opportunity to amend by making the dismissal without prejudice. *Compare Lyons v. Sheetz,* 834 F.2d 493, 495 (5th Cir.1987) (rejecting, on basis of plaintiff's bad faith, complaint on appeal that dismissal with prejudice did not afford an opportunity to amend). Given the long pendency of this suit, and appellant's full opportunity to state and restate his claims, and their elaboration in his brief on appeal, we see no reason to *sua sponte* change the dismissal from one with prejudice to one without prejudice. We stated in *Good v. Allain,* 823 F.2d 64, 67 (5th Cir.1987), "When a dismissal of a pro se complaint is warranted, it should generally be without prejudice in order to afford the plaintiff the opportunity to file an amended complaint." However, in that case, the complaint challenged only the lack of a hearing before the appellant's return from Minnesota to Mississippi, and we noted, "If he had been denied the opportunity to challenge his removal from Mississippi, he might have a viable § 1983 claim." *Id.* While we also observed that "we perceive no viable claim Good could include in an amended complaint," it would appear that this latter statement refers to the challenge to the lack of a hearing before Good's return to Mississippi. *Id.* As to that, we had predicated our holding on the validity of his Mississippi conviction, as to which Good had made no challenge. In other words, the matrix of facts which Good alleged left possible constitutional violations open, although it did not affirmatively reflect them. In *Good,* we relied in this connection on *Moawad v. Childs,* 673 F.2d 850, 852 (5th Cir.1982). There we reversed a dismissal with prejudice to allow an amendment. But we observed: "Unless proper procedures have been followed, a claim of mail censorship could state a constitutional claim.... [H]is complaint of mail censorship, of guard harassment and his change of classification without due process require findings...." We concluded by saying, "Because Moawad's complaint, liberally construed, stated claims that were not addressed by the court below, we must send his case back to the district court for further proceedings." *Id.*

In this case, we conclude that a *sua sponte* change in the district court's order from dismissal with to dismissal without prejudice is neither appropriate nor mandated by *Good* or *Moawad.* It is entirely clear that appellant is entitled to no relief on account of the food poisoning incident which is the only matter raised in his complaint.